**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Street, Ste. 650-1507
Telephone: (415) 839-7000
Facsimile: (888) 410-0415
Email: yeremey@skclassactions.com
        brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: (617) 377-7404
Facsimile: (888) 410-0415
Email: joel@skclassactions.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE GUERRA, on behalf of himself and all others similarly situated, | CASE NO.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | 1.  Violation of California False Advertising Law |
| APPLE INC., a corporation, | 2.  Violation of California Unfair Competition Law |
| Defendant. | 3.  Violation of California Consumers Legal Remedies Act |
| | 4.  Unjust Enrichment |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Eddie Guerra ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Apple, Inc. ("Apple" or "Defendant"), based on Defendant's false and deceptive advertising of its Apple TV movies and other video content.

**APPLE'S VIOLATION OF AB 2426 AND FALSE ADVERTSING OF "4K" CONTENT**

1.      On January 1, 2025, California's Assembly Bill 2426, the California Digital Property Rights Transparency Law, California Business & Professions Code § 17500.6 went into effect ("AB 2426" or Section 17500.6). Section 17500.6 prohibits a seller of a digital good from advertising a digital good (such as movies and television shows) with terms "buy," "purchase," or any other term with a reasonable person would understand to confer an unrestricted ownership interest unless 1) the seller receives at the time of the transaction an affirmative acknowledge from the purchaser indicating that the purchaser is receiving a *license* to access the digital good, a complete list of restrictions and conditions of the license, *and that access to the digital good may be unilaterally revoked* by the seller if they no longer hold a right to the digital good or 2) the seller provides to the consumer before executing each transaction a clear and conspicuous statement that states in plan language that "buying' or "purchasing" the digital good is a license and includes a hyperlink, QR code, or similar method to access the terms and conditions that provide full details on the license. Section 17500.6(b)(1). Section 17500.6 further requires that any affirmative acknowledgement from the purchaser or clear and conspicuous statement pursuant to § 17500.6(b)(1) "shall be distinct and separate from any other terms and conditions of the transaction that the purchaser acknowledges or agrees to." Section 17500.6(b)(2).

2.      California enacted Section 17500.6 on the heels of high-profile debacles by media and entertainment companies revoking, or threatening to revoke, access to digital goods that consumers thought they "purchased" and "owned" forever. For instance, in April 2024, the company Ubisoft revoked the licenses to access a video game it sold called "The Crew," meaning that all of its customers that thought they "purchased" the game could no longer play it.[1] This stood in sharp contrast to consumer expectations of what "ownership" of a video game meant. After all, before the

---

[1] https://www.engadget.com/ubisoft-is-deleting-the-crew-from-players-libraries-reminding-us-we-own-nothing-165328083.html

mass proliferation of online-only video games, gamers could "buy" a Nintendo 64 or Playstation game and play it *forever* on an offline gaming console at home. In another high-profile example, Sony faced backlash after announcing it would remove Discovery content (*i.e.*, thousands of TV shows) from users' digital libraries, only retracting this move after public outrage.[2] In another more dated example, Amazon remotely deleted copies of George Orwell's "1984" from customers' Kindles without warning in 2009. Again, on the backdrop of literally hundreds of years of consumer expectation, consumers never thought that they could ever lose access to a "book" that they "purchased," at least not without losing the physical book. Similarly, when Microsoft shut down its e-book store in 2019, customers lost access to all their purchased books, receiving refunds but no permanent copies.[3]

3.      The California Rules Committee notes and comments to Section 17500.6 summarize many of the concerns California aimed at addressing when passing the new rule:

> Our increasingly online lives have opened up a vast market of online "digital goods." These are products that are offered for "sale" but are not available to be permanently downloaded. These digital goods, such as movies on streaming services or books to be read on various electronic devices, are "purchased" by consumers. However, despite what an ordinary consumer might think, oftentimes these sales are only providing license to access and use these digital goods and do not confer ownership of anything.
>
> This bill seeks to address the arguably misleading use of the terms "buy," "purchase," or other similar terms in these transactions by prohibiting their use unless the seller of the good either (1) secures an affirmative acknowledgement from the buyer that indicates they are only receiving a license to access the digital good that may be unilaterally revoked and includes the terms of the license; or (2) the seller provides a clear and conspicuous statement that the transaction is only conferring a license and includes some easily accessible method to access the terms and conditions of that license. These must be separate and apart from any other terms and conditions. …
>
> **Comments**
>
> *Providing transparency in digital good "sales".* Digital goods are now ubiquitous. These online products and services include music, movies, video games, and books. These products are increasingly easy to purchase on the many devices most people use to take advantage of these goods, reading on a Kindle, watching a movie on their laptop, or playing an online video game on their gaming system.

---

[2] https://publicknowledge.org/ownership-used-to-mean-something/

[3] *Id.*

However, while many of these goods are available to "buy" or "purchase" online, the buyer is not receiving the type of ownership that comes with ancient products like DVDs, CDs, or paper books:

> As the entertainment industry shifts its distribution strategy to let people buy or rent movies closer to—or simultaneously with—their release in theaters, you may find yourself amassing a larger digital library than you've had in the past. But when you buy a movie from a digital service like Amazon Prime Video or Vudu, does it really belong to you? What if you buy a song on iTunes or download one to your phone from Spotify? Are these files yours forever? If you cancel the service or, as unlikely as it may seem, one of these huge companies goes out of business, what then?

> The answer is a little complex, but the short version is, no, you don't actually own the digital media files that you purchase. This doesn't mean you're imminently at risk of losing every digital movie and TV show you've ever bought at the whim of a megacorp, but it is possible. . . .

> What you're purchasing in most cases is a license to watch that video or listen to that song.

While there is nothing inherently wrong with these licensing structures, they may not align with what a consumer expects, especially when the term "buy" or "purchase" is being used. A report put out by the Department of Commerce's Internet Policy Task Force concludes:

> It does not appear that consumers have a clear understanding whether they own or license the products and services they purchase online due in part to the length and opacity of most EULAs, the labelling of the "buy" button, and the lack of clear and conspicuous information regarding ownership status on websites. The Task Force believes that consumers would benefit from more information on the nature of the transactions they enter into, including whether they are paying for access to content or for ownership of a copy, in order to instill greater confidence and enhance participation in the online marketplace.

This bill seeks to ensure consumers know what they are getting in these transactions by prohibiting sellers of these digital goods from advertising or offering for sale digital goods using the terms "buy," "purchase," or other similar terms which a reasonable person would understand to confer an unrestricted ownership interest in the digital good. A "digital good" is a digital audiovisual work, digital audio work, digital book, digital code, or digital application or game, as defined, whether electronically or digitally delivered or accessed.

Ex. 1.

4.      While many digital content providers were quick to adjust their marketing of movies, TV shows, and games sold (or licensed) online, Apple effectively made no change in response to Section 17500.6 despite having its headquarters in California and surely closely following § 17500.6's passage. To this day, Apple's massively popular Apple TV service offers movies, TV shows, and other digital content with a "Buy or Rent" button, as depicted below:



5.      When a consumer clicks "Buy or Rent," they are presented with separate prices to either "Buy" or "Rent" the content, with no disclosures or asterisks anywhere that the "Buy" option is actually an offer for the sale of a "license," and not an offer of an unrestricted ownership interest in the digital good. The "Buy" option is always more expensive than the "Rent" option, as depicted below for the movie "Greyhound" starring Tom Hanks.

6.      Unknown to consumers, Apple has the option and the right to unilaterally revoke this license, such as if it loses the rights to any given digital good, such as through a merger with another company, sale of media and licensing rights, or discontinuation of its Apple TV service. In other words, consumers are not actually "purchasing" the digital good, but only a limited license to the digital good, without the mandatory disclosures required by Section 17500.6.

7.      To make matters worse, Apple also advertises many of its movies and TV shows as "4K," referring to high-end resolution of approximately 4,000 pixels. 4K resolution is preferred by

and sought out by consumers because of the perceived premium image and motion quality of the display, with sharper, more detailed, and clearer images, especially on larger screens. 4K resolution provides nearly four times the pixel count of normal HD (high definition) content, which typically maxes out at 1080 pixels. The "4K" image is displayed prominently before a consumer decides whether to purchase the movie, as depicted below for the movie "Greyhound" below:



8.      However, despite offering a limited opportunity for consumers to "download" digital content after "purchase" for a short period of 30 days (after which downloads are no longer permitted), any downloaded content is made available only in a maximum of 1080 pixels (regular HD), *even if the digital content was advertised as 4K at the time of sale*. For instance, a consumer purchasing and then downloading the Greyhound movie depicted above would then be surprised to learn (and even then only if they happened to investigate) that the video quality is only 1080p, *not 4K*, in the file description of the movie in their Apple movie library, as depicted below:

9.      Accordingly, Apple does not allow the downloading of 4K content for offline viewing, despite advertising digital content as 4K at the time of sale. 4K content can only be viewed

in 4K, if at all, only by streaming the content over an internet connection and is subject at all times to Apple removing the license to view the content if it chooses to. In violation of Section 17500.6, Apple advertises putative 4K digital content on its Apple TV platform as available for "purchase" even though it cannot be downloaded for offline viewing in 4K and despite the "sale" only conveying a limited license. Apple's conduct not only violates Section 17500.6, but is also false and misleading and violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over Defendant because its principal place of business is in Cupertino, California and Defendant conducts substantial business within California, including the promotion, marketing, and sale of the digital content in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Further, a substantial part of the events or omissions giving rise to Plaintiff's claims also occurred in California.

12.    Plaintiff resides in Chatsworth, California, and he purchased the audiovisual work in California within the statute of limitations period.

## PLAINTIFF

13.    Plaintiff is a citizen and resident of the United States and the State of California. He currently resides in Chatsworth, California.

14.    In August 2025, Plaintiff paid for a movie called "F1: The Movie" on Defendant's Apple TV service for $24.99. Plaintiff believed that he was receiving unrestricted rights to the movie because he clicked the "Buy" button when purchasing it. Plaintiff also believed that he would have

unrestricted rights to download and view the movie in 4K resolution, because it was prominently advertised as "4K" on the screen at the time he made the purchase. Unbeknownst to Plaintiff, Apple instead only provided Plaintiff with a license to view the movie and retained the right to terminate the license at any time. Further, unbeknownst to Plaintiff at the time of purchase, Apple did not provide Plaintiff with an opportunity to download the movie for offline viewing in 4K resolution. These misrepresentations and omissions were fundamental parts of Plaintiff's decision to purchase the movie at the premium price of $24.99. Had he known the true nature of the misrepresentations and omissions, he would not have purchased the movie, or he would have paid less for it. Thus, Plaintiff has suffered injury in fact and lost money as a result of Apple's misleading, false, and unfair and deceptive practices as alleged herein.

15.    Plaintiff will be unable to rely on Apple TV's 4K or "Buy" representations in the future, as it is not possible to tell whether digital content on Apple TV will be available for download in 4K resolution until after the purchase is complete, and there is no prominent or adequate disclosure that the sale is a mere license. He will be unable to determine the true nature of the transaction absent first making a purchase, and so will be unable to purchase Apple TV digital products in the future, although he would like to.  Plaintiff remains interested in purchasing Apple TV 4K digital content, intends on purchasing them in the future, and would purchase them in the future if Defendant ensured that the 4K and "Buy" representations were accurate and truthful.

16.    As a result of Defendant's unlawful business practices, and the harm caused to Plaintiff and Class members, Defendant should be required to pay for all damages and/or restitution. Monetary compensation alone is insufficient to remedy the ongoing harm that is being caused to Plaintiff, and Class members, who are unaware of Defendant's deceptive conduct and will continue purchasing the Apple TV digital content, reasonably but incorrectly believing that they are purchasing 4K content and not just a license to view digital content without the opportunity to download it in 4K for offline viewing. As such, injunctive relief requiring Defendant to cease its false and deceptive practices is necessary and appropriate.

## **DEFENDANT**

17.     Apple Inc. is a Delaware corporation with its headquarters and principal place of business in Cupertino, California. All of Defendant's relevant decisions concerning Apple TV advertising were made in California. Further, Apple's terms and conditions require the application of California law to all putative class members nationwide.[4]

18.     Based on these facts, extraterritorial application of California laws to the Class is appropriate. *See*, *e.g.*, *In re iPhone 4S Consumer Litig.*, No. 12-cv-1127-CW, 2013 WL 3829653, *7 (N.D. Cal. July 23, 2013) (holding California consumer protection law applied to non-residents where wrongful conduct originated from California); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011) (holding that California law could apply to a nationwide class because "[t]he facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved, or otherwise controlled from [the defendant's] headquarters in California.'").

19.     Alternatively, the Court can and should address choice-of-law issues at the class certification stage. *See*, *e.g.*, *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012) (issues regarding the assertion of nationwide class claims "boil down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage.").

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All persons in the United States who have purchased a digital audiovisual work from Apple TV that was advertised as "4K."

**California Class**

All persons in California who have purchased a digital audiovisual work from Apple TV that was advertised as "4K."

---

[4] https://www.apple.com/uk/legal/internet-services/itunes/uk/terms.html

21.     Pursuant to Fed. R. Civ. P. 23(c)1(C), each of the above class definitions is a placeholder that may be altered or amended any time before final judgment.  As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate before the Court determines whether class certification is appropriate.

22.     Plaintiff is a members of all classes.

23.     <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. Apple sells hundreds of thousands, if not millions, of audiovisual works throughout the United States and the State of California on a monthly basis. The number of individuals who purchased audiovisual works during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

24.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

      a.   Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the marketing, distribution, and sale of the audiovisual works;

      b.   Whether Defendant's sale of audiovisual works violates 17500.6;

      c.   Whether Defendant's use of the challenged advertising constituted false or deceptive advertising;

      d.   Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

      e.   Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

CLASS ACTION COMPLAINT
CASE NO.                                                                                                          9

1    f.   Whether Plaintiff and the Classes are entitled to damages and/or restitution, and

2         if so, in what amount;

3    g.   Whether Plaintiff and the Classes are entitled to an injunctive relief;

4    h.   Whether Plaintiff and the Classes are entitled to punitive damages, and if so, in

5         what amount; and

6    i.   Whether Plaintiff and the Classes are entitled to an award of reasonable

7         attorneys' fees, interest, and costs of suit.

8    25.    Defendant has engaged in a common course of conduct giving rise to violations of

9    the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes.

10   Similar or identical statutory and common law violations, business practices, and injuries are

11   involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a

12   common nucleus of operative fact, namely, Defendant's deceptive sale and advertising of the

13   audiovisual works. Each instance of harm suffered by Plaintiff and Class members has directly

14   resulted from a single course of unlawful conduct. Each Class member has been exposed to the same

15   deceptive practice, as the advertising of audiovisual works: (a) bears the same material "4K"

16   representation and is sold using a "Buy" button without disclosure that the audiovisual works are

17   only offered as a license, and (b) the audiovisual works do not meet these representations of fact.

18   Therefore, individual questions, if any, pale in comparison to the numerous common questions

19   presented in this action.

20   26.    Superiority: Because of the relatively small damages at issue for each individual

21   Class member, no Class member could afford to seek legal redress on an individual basis.

22   Furthermore, individualized litigation increases the delay and expense to all parties and multiplies

23   the burden on the judicial system presented by the complex legal and factual issues of this case.

24   Individualized litigation also presents a potential for inconsistent or contradictory judgments. A

25   class action is superior to any alternative means of prosecution.

26   27.    Typicality: The representative Plaintiff's claims are typical of those of the proposed

27   Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform

28   unlawful conduct as alleged herein.

28. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

29. Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
**(*For all Classes*)**

30. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

31. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

32. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

33. Defendant has represented and continues to represent to the public, including Plaintiff and members of the Nationwide Class and California Class, through its deceptive advertising, that the audiovisual works are available in 4K resolution and are being sold with unrestricted rights, without disclosing that the audiovisual works cannot be downloaded for offline viewing in 4K and that class members are only receiving a revokable license to view the audiovisual works in 4K online with an internet connection. Because Defendant has disseminated misleading

information regarding the audiovisual works, and Defendant knows, knew, or should have known, through the exercise of reasonable care, that the representations are false and misleading, Defendant has violated the FAL.

34.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the Nationwide Class and California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to him and members of the Nationwide Class and California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Nationwide Class and California Class may be irreparably harmed and/or denied an effective and complete remedy.

35.     Plaintiff and members of the Nationwide Class and California Class have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

## SECOND CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.* (*For all Classes*)

36.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

37.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Class against Defendant.

38.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ".

39.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of audiovisual works was and continues to be "unlawful" because it violates, *inter alia*, the CLRA, the FAL, and Section 17500.6

1   as alleged herein. As a result of Defendant's unlawful business acts and practices, Defendant has

2   unlawfully obtained money from Plaintiff and members of the Nationwide Class and California

3   Class.

4         40.    Under the UCL, a business act or practice is "unfair" if the Defendant's conduct

5   offends an established public policy, or is immoral, unethical, oppressive, unscrupulous, or

6   substantially injurious to consumers, as the benefits for committing such acts or practices are

7   outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and

8   continues to be of no benefit to purchasers of the audiovisual works, as it is misleading, unfair,

9   unlawful, and is injurious to consumers who rely on the advertising and omissions. Further, violating

10  Section 17500.6 offends the established public policy of California, which has explicitly forbidden

11  the advertising at issue because it is confusing, deceptive, and injurious to consumers. Therefore,

12  Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business

13  acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and

14  members of the Nationwide Class and California Class.

15        41.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is

16  likely to deceive members of the consuming public. Defendant's conduct was and continues to be

17  fraudulent as it represents that the audiovisual works are available in 4K resolution and are being

18  sold with unrestricted rights, without disclosing that the audiovisual works cannot be downloaded

19  for offline viewing in 4K and that class members are only receiving a revokable license to view the

20  audiovisual works in 4K online with an internet connection. Because Defendant misled Plaintiff and

21  members of the Nationwide Class and California Class, Defendant's conduct was "fraudulent." As

22  a result of Defendant's fraudulent business acts and practices, Defendant has and continues to

23  fraudulently obtain money from Plaintiff and members of the Nationwide Class and California

24  Class.

25        42.    Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly,

26  and fraudulently obtained money to him, and members of the Nationwide Class and California

27  Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from

28  violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise,

1 Plaintiff and members of the Nationwide Class and California Class may be irreparably harmed

2 and/or denied an effective and complete remedy.

3      43.    Plaintiff and class members have suffered an injury in fact resulting in the loss of

4 money and/or property as a proximate result of the violations of law and wrongful conduct of

5 Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at

6 issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are

7 not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not

8 equally certain as restitution because the standard that governs restitution is different than the

9 standard that governs damages.  Hence, the Court may award restitution even if it determines that

10 Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and

11 restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of

12 money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including

13 restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original

14 funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for

15 damages are not equally certain as restitution because claims under the UCL entail few elements.

16 In short, significant differences in proof and certainty establish that any potential legal claim cannot

17 serve as an adequate remedy at law.

18      44.    Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law

19 if, for instance, damages resulting from their purchase of the audiovisual work is determined to be

20 an amount less than the premium price of the audiovisual work.  Without compensation for the full

21 premium price of the audiovisual work, Plaintiff would be left without the parity in purchasing

22 power to which he is entitled.

### THIRD CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
**(*For all Classes*)**

26      45.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations

27 contained in all preceding paragraphs of this complaint.

46.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Class against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

47.    The audiovisual works are a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the audiovisual works by Plaintiff and members of the Nationwide Class and California Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

48.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the audiovisual works with its current advertising, Defendant has represented and continues to represent that the audiovisual works have characteristics that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

49.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the audiovisual works with their current advertising, Defendant has represented and continues to represent that the audiovisual works are of a particular standard, quality, or grade which they do not possess. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

50.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the audiovisual works as discussed herein, Defendant has violated section 1770(a)(9) of the CLRA.

51.    At all relevant times, Defendant has known or reasonably should have known that its representations and omissions concerning the audiovisual works is false and deceptive, and that Plaintiff and other members of the Nationwide Class and California Class would reasonably and justifiably rely on it when purchasing the audiovisual works. Nonetheless, Defendant persisted in making the representations and omissions to deceive consumers.

52.    Plaintiff and members of the Nationwide Class and California Class have justifiably relied on Defendant's misleading representations and omissions. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Nationwide Class and California Class.

53.     Plaintiff and members of the Nationwide Class and California Class have suffered and continue to suffer injuries caused by Defendant because they would have paid less for the audiovisual works, or would not have purchased them at all, had they known that the truth.

54.     Accordingly, Plaintiff, on behalf of himself and all other members of the Classes, seeks damages and to enjoin the unlawful acts and practices described herein.

55.     On October 1, 2025, a CLRA demand letter was sent to Defendant's headquarters and registered agent.  This letter provided notice of Defendant's violation of the CLRA, for Plaintiff and the Classes, and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.

56.     Plaintiff seeks all relief available under this cause of action, other than damages. Plaintiff may amend the Complaint in the future to add a damages claim.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

57.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

58.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Class against Defendant.

59.     To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

60.     Plaintiff and the class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

61.     Defendant knew of the benefit conferred on it by Plaintiff and the class memb ers.

62.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the class members' purchases of the audiovisual works, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the audiovisual works could not be downloaded in 4K resolution and were only being offered with a revokable license to view 4K content online with an active internet connection.  This caused injuries

to Plaintiff and class members because they would not have purchased the audiovisual works or would have paid less for them if the true facts concerning the audiovisual works had been known.

63.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the audiovisual works to Plaintiff and the class members.

64.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

65.    Plaintiff and the class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the audiovisual works.

66.    As a direct and proximate result of Defendant's actions, Plaintiff and the class members have suffered in an amount to be proven at trial.

67.    Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representatives, and appointment of his counsel as Class counsel;

B.    A declaration that Defendant's actions, as described herein, violate the laws described herein;

C.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

1    D.    An award of injunctive and other equitable relief as is necessary to protect the

2  interests of Plaintiff and the Class members, including, *inter alia*, an order prohibiting Defendant

3  from engaging in the unlawful acts described above;

4    E.    An award of all economic, monetary, actual, consequential, and compensatory

5  damages caused by Defendant's conduct;

6    F.    An award of punitive damages;

7    G.    An award of nominal damages;

8    H    An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

9    I.    An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to

10  the extent allowable; and

11    J.    For such further relief that the Court may deem just and proper.

12

13                                    **DEMAND FOR JURY TRIAL**

14    Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with

15  respect to all issues triable of right by jury.

16  DATED: October 8, 2025                    Respectfully submitted,

17

18                                            **SMITH KRIVOSHEY, PLLC**

19                                            By:    */s/ Yeremey O. Krivoshey*
                                                      Yeremey O. Krivoshey

20
                                              Yeremey O. Krivoshey (State Bar No. 295032)
21                                            Brittany S. Scott (State Bar No. 327132)
                                              28 Geary Street, Ste. 650-1507
22                                            San Francisco, CA 94108
                                              Phone: 415-839-7000
23                                            Facsimile: (888) 410-0415
                                              E-Mail:  yeremey@skclassactions.com
24                                                       brittany@skclassactions.com

25
                                              **SMITH KRIVOSHEY, PC**
26                                            Joel D. Smith (State Bar No. 244902)
                                              867 Boylston Street, 5th Floor, Ste. 1520
27                                            Boston, MA 02116
                                              Phone: 617-377-7404
28

1

E-Mail:  joel@skclassactions.com

2

*Attorneys for Plaintiff and the Putative Classes*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO.

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Yeremey O. Krivoshey, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Smith Krivoshey, PC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Louisville, Kentucky this 8th day of October 2025.


                                         _/s/ Yeremey O. Krivoshey_
                                          Yeremey O. Krivoshey