1   CHRISTOPHER CHORBA, SBN 216692
       cchorba@gibsondunn.com
2   WESLEY SZE, SBN 306715
       wsze@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    310 University Avenue
4   Palo Alto, CA 94301-1744
    Telephone: 650.849.5300
5
    LAUREN M. BLAS, SBN 296823
6      lblas@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
7   333 South Grand Avenue
    Los Angeles, CA 90071-3197
8   Telephone: 213.229.7000

9   *Attorneys for Defendant Apple Inc.*

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                    **SAN JOSE DIVISION**

13  EDDIE GUERRA, on behalf of himself and all      Case No. 5:25-cv-08593-NW
    others similarly situated,
14                                                   **DEFENDANT APPLE INC.'S NOTICE**
                        Plaintiff,                   **OF MOTION AND MOTION TO**
15                                                   **DISMISS PLAINTIFF'S COMPLAINT;**
                                                     **MEMORANDUM OF POINTS AND**
16          v.                                       **AUTHORITIES IN SUPPORT THEREOF**

17  APPLE INC.,                                      *[Request for Judicial Notice, Declaration of*
                                                     *Wesley Sze, and [Proposed] Order filed*
18                      Defendant.                   *concurrently]*

19                                                   Judge:        Hon. Noël Wise
                                                     Courtroom:    3, Fifth Floor
20                                                   Hearing Date: April 29, 2026
                                                     Hearing Time: 9:00 a.m.
21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2

**PLEASE TAKE NOTICE THAT** on April 29, 2026, at 9:00 a.m., or as soon thereafter as
the matter may be heard before the Honorable Noël Wise, in Courtroom 3, 5th Floor, of the United
States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street,
San Jose, CA 95113, Defendant Apple Inc. will, and hereby does, move this Court, pursuant to Federal
Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6), for an order dismissing Plaintiff's
Complaint on several grounds:

8

1.     Plaintiff lacks Article III and statutory standing to bring this lawsuit because he has not
suffered any cognizable actual or imminent injury.  Plaintiff has not lost access to the movie he
purchased, which remains available on the Apple TV app to this day, and he does not allege any facts
establishing that he paid a premium for a bargained-for feature that he did not receive.

12

2.     Plaintiff does not plead facts satisfying the required elements of Section 17500.6 of the
California Business & Professions Code, which does not apply to transactions—like the one here—
where the seller makes the digital good available for download at the time of purchase.

15

3.     Plaintiff does not state any claim under the California consumer protection statutes
because he does not allege any actionable misrepresentation or omission by Apple about the nature of
his purchase on the Apple TV app.

18

Defendant's Motion is based on this Notice of Motion and Motion, the accompanying
Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, Declaration
of Wesley Sze and exhibits thereto, all other documents on file in this action, and any oral argument
of counsel.

22

DATED:  December 19, 2025                    GIBSON, DUNN & CRUTCHER LLP

24

By:    */s/ Christopher Chorba*
                              Christopher Chorba

25

*Attorneys for Defendant Apple Inc.*

26

27

28

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................2

III.  SUMMARY OF FACTUAL ALLEGATIONS...................................................2

IV.   ARGUMENT .......................................................................................................5

    A.    Plaintiff Lacks Standing to Bring Claims Against Apple ........................5

        1.    Plaintiff Has Not Suffered Any Concrete and Non-Speculative Injury. ............5

            a.    *Plaintiff Has Not Been Injured Because He Still Has Access to the Movie He Purchased.* ...........5

            b.    *Plaintiff Cannot Rely on an "Overpayment" Theory of Injury.* .............7

        2.    Plaintiff Lacks Standing to Seek Injunctive Relief. ..........................................10

    B.    Plaintiff Has Not Alleged Facts Sufficient to State a Claim for Relief .................12

        1.    Plaintiff Has Not Alleged That Section 17500.6 Applies to His Transaction Here. ................12

        2.    Plaintiff Fails to Allege the Necessary Elements to State a Misrepresentation Claim (Counts I–III)..................14

            a.    *Plaintiff Does Not Allege Any Actionable Misrepresentation.*...............14

            b.    *Plaintiff Does Not Allege Reliance (Counts I–III).* .............................19

            c.    *Digital Movies Are Not "Goods" or "Services" Under the CLRA (Count III).* ................20

            d.    *Plaintiff Has Not Pled an Intent to Defraud (Count III).* .....................21

            e.    *Plaintiff Has Not Alleged "Unfair" or "Unlawful" Conduct Under the UCL (Count II).* ..................22

        3.    Plaintiff Cannot Seek Equitable Relief Because He Has an Adequate Remedy at Law (All Counts). ....................22

V.    CONCLUSION ..................................................................................................24

DEFENDANT APPLE INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 5:25-CV-08593-NW

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Inc. Device Perf. Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................12, 13

*Barber v. Nestlé USA, Inc.*,
  154 F. Supp. 3d 954 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018).  ...................17, 18

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019)................................................................................14, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................12

*Beyer v. Symantec Corp.*,
  No. 18-2006-EMC, 2019 WL 935135 (N.D. Cal. Feb. 26, 2019) ..............................8

*Birdsong v. Apple Inc.*,
  590 F.3d 955 (9th Cir. 2009)........................................................................................9

*Cabrera v. Bayer Healthcare LLC*,
  No. 17-8525, 2024 WL 1699357 (C.D. Cal. Feb. 23, 2024)......................................11

*Cahen v. Toyota Motor Corp.*,
  717 F. App'x 720 (9th Cir. 2017) ................................................................................8

*Castillo v. Walmart, Inc.*,
  No. 24-6757-BLF, 2025 WL 1828465 (N.D. Cal. July 1, 2025)................................8

*Caudel v. Amazon.com, Inc.*,
  No. 20-848, 2021 WL 4819602 (E.D. Cal. Oct. 15, 2021) ........................................6

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................................................17

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) ...........................................................................18

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983).......................................................................................................10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).......................................................................................................6

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006).....................................................................................14

Gibson, Dunn &
Crutcher LLP

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012)................................................................17, 19

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017)................................................................15

*Fairbanks v. Super. Ct.*,
    46 Cal. 4th 56 (2001) ................................................................21

*Fernandez v. Atkins Nutritionals, Inc.*,
    No. 17-1628, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018)................................................................11

*Ferrington v. McAfee, Inc.*,
    No. 10-1455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)................................................................20, 21

*Gamez v. Zero Day Nutrition Co.*,
    No. 22-1655, 2023 WL 12168700 (C.D. Cal. May 3, 2023) ................................................................19

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014)................................................................12

*Graham v. Andros Foods USA, Inc.*,
    No. 25-3561, 2025 WL 3190647 (C.D. Cal. Aug. 12, 2025)................................................................22

*Graham v. VCA Antech, Inc.*
    No. 14-8614, 2016 WL 5958252 (C.D. Cal. Sept. 12, 2016), *aff'd sub nom.*
    *Graham v. VCA Animal Hosps., Inc.*, 729 F. App'x 537 (9th Cir. 2018) ................................................................19

*Great Pac. Sec. v. Barclays Capital, Inc.*,
    743 F. App'x 780 (9th Cir. 2018) ................................................................19

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022)................................................................23

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................22

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................16

*Harris v. McDonald's Corp.*,
    No. 20-6533-RS, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ................................................................19

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ................................................................21

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018)................................................................14, 16

*Hubbard v. Google LLC*,
    No. 19-7016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................................23

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................................6

*Jackson v. Gen. Mills, Inc.*,
   No. 18-2634, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ........................................11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .......................................................................................12

*Kowalsky v. Hewlett-Packard Co.*,
   No. 10-2176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ...............................21

*Kumandan v. Google LLC*,
   No. 19-4286-BLF, 2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ....................................21

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) .....................................................................................................5

*La Barbera v. Ole Mexican Foods Inc.*,
   No. 20-2324, 2023 WL 4162348 (C.D. Cal. May 18, 2023) ..........................................19

*LaBella v. Apple Inc.*,
   No. 24-07588-NW, 2025 WL 3014037 (N.D. Cal. Oct. 28, 2025)..................................24

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ...................................................................................10

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)..........................................................................................15

*Lazebnik v. Apple Inc.*,
   No. 13-4145-EJD, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) .................................20

*Levit v. Nature's Bakery, LLC*,
   767 F. Supp. 3d 955 (N.D. Cal. 2025) ...........................................................................16

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997)............................................................................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................5, 7, 10

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020)..........................................................................................8, 9

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003)..........................................................................................22

*Meyer v. Cap. All. Grp.*,
   No. 15-2405, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...........................................21

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) .....................................................................................................5

*Morehouse v. Apple Inc.*,
   No. 25-2988-NW, 2025 WL 3525573 (N.D. Cal. Dec. 5, 2025).....................1, 5, 6, 8, 10, 11, 15

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ...................................................................................8

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
9 Cal. 5th 279 (2020) ...............................................................................................22

*Pearl v. Coinbase Global, Inc.*,
No. 22-3561-MMC, 2024 WL 3416505 (N.D. Cal. July 15, 2024)...........................21

*In re Plum Baby Food Litig.*,
No. 21-913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024)...............................16

*Rothman v. Equinox Holdings, Inc.*,
No. 22-9760, 2021 WL 124682 (C.D. Cal. Jan. 13, 2021) .......................................19

*Ryan v. Starco Brands, Inc.*,
No. 24-642-SVK, 2024 WL 5102651 (N.D. Cal. Apr. 19, 2024)...............................24

*San Miguel v. HP Inc.*,
317 F. Supp. 3d 1075 (N.D. Cal. 2018) ...................................................................18

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) .....................................................................23

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020).....................................................................................22

*Tan v. GrubHub, Inc.*,
171 F. Supp. 3d 998 (N.D. Cal. 2016) ......................................................................22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2017).....................................................................................................7

*Victorino v. FCA US LLC*,
No. 16-1617, 2018 WL 2455432 (S.D. Cal. June 1, 2018).......................................23

*Watkins v. MGA Ent., Inc.*,
550 F. Supp. 3d 815 (N.D. Cal. 2021) ......................................................................19

*Williams v. Apple Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) ......................................................................19

*Woulfe v. Universal City Studios LLC*,
No. 22-459, 2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) ...................................20

*Yunker v. Pandora Media, Inc.*,
No. 11-3113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)...............................20

**Statutes**

17 U.S.C. § 106 .................................................................................................................15

Cal. Bus. & Prof. Code § 17204 .........................................................................................5

Cal. Bus. & Prof. Code § 17500.6 .................................................................1, 6, 12, 13, 14, 17

Cal. Bus. & Prof. Code § 17500.6(a)(4) ...........................................................................14

Cal. Bus. & Prof. Code § 17500.6(b)(4)(C)...........................................................1, 13, 17

Cal. Bus. & Prof. Code § 17535 ........................................................................................5

Cal. Civ. Code § 1761(b) .................................................................................................20

Cal. Civ. Code § 1770(a)..................................................................................................20

**Other Authorities**

"Buy," Merriam-Webster Dictionary,
    https://www.merriam-webster.com/dictionary/buy ...................................................15

Senate Judiciary Committee, Analysis of AB 2426 (June 6, 2024),
    https://sjud.senate.ca.gov/system/files/202406-/ab-2426-irwin-sjud-analysis.pdf.........................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Eddie Guerra's lawsuit arises from a single digital movie purchase on the Apple TV app.  Although he concedes he can view the movie in 4K (i.e., ultra-high definition) quality, he nevertheless contends that Apple misrepresented the nature of what he purchased because he did not know that he was only receiving a "license" to the movie and that he would not be able to download the movie in his preferred format.  These allegations do not support any theory of injury and fail to state a claim.

To start, the Court should dismiss the Complaint under Rule 12(b)(1) because Plaintiff has not suffered any injury and does not plead facts plausibly demonstrating an imminent risk of injury.  His speculative concern that Apple might revoke access is unsupported: there has been no interruption in his access to the movie he purchased, which remains available for streaming in 4K resolution, and he does not point to any facts suggesting he might lose access in the future.  This Court recently considered a similar lawsuit involving purchases to access digital content and held that allegations about the potential—but not imminent—risk of losing access to digital content do not confer standing.  *See Morehouse v. Apple Inc.*, No. 25-2988-NW, 2025 WL 3525573, at *3 (N.D. Cal. Dec. 5, 2025).  And as with the plaintiffs in that case, Plaintiff here also does not sufficiently allege non-conclusory "facts supporting [his] theory that [he] paid a price premium." *Id.* at *2.  So while this lawsuit involves digital movies rather than digital books, the core allegations are similar and the principles that led to dismissal of the *Morehouse* complaint apply equally here.

In addition to the lack of Article III and statutory standing, Plaintiff's claims should also be dismissed under Rule 12(b)(6).  While Plaintiff invokes the newly enacted Section 17500.6 of the California Business and Professions Code, his own allegations confirm that the statute does not apply to his purchase because Apple made the digital movie "available at the time of purchase for permanent offline download"—which places this transaction within the statutory exemption.  Cal. Bus. & Prof. Code § 17500.6(b)(4)(C).  He also cannot state a claim under other California consumer protection statutes because the Complaint does not allege any lost money or property, which is needed to bring a claim under the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), or the

Consumers Legal Remedies Act ("CLRA").  Plaintiff's allegations also do not identify any omission or affirmative misrepresentation by Apple, plead reliance on any such omission or misrepresentation, or establish the other elements of these claims, including that the digital movie is a covered "good" or "service" under the CLRA, that Apple had the requisite intent to defraud, and that Apple engaged in "unfair" or "unlawful" conduct under the UCL.  Finally, because Plaintiff seeks monetary damages and has an adequate remedy at law, the Court should dismiss his claims for equitable relief.

Because Plaintiff alleges no injury and has not pleaded a viable claim, the Complaint should be dismissed.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiff has standing to sue when he continues to have access to his purchased movie and has not plausibly alleged he will lose access, or experience any injury, in the future.

2.    Whether Plaintiff's factual allegations are sufficient to state a consumer protection claim under the FAL, CLRA, and UCL.

3.    Whether Plaintiff can seek equitable relief that is duplicative of his legal claims and without alleging how a remedy at law would be inadequate.

## III.    SUMMARY OF FACTUAL ALLEGATIONS

The Apple TV app is an online platform where users can browse, rent, and purchase "movies, TV shows, and other digital content." ¶ 4.[1]  Each movie available on Apple TV has a listing page.  As shown in the screenshot below, the listing page generally contains information about the title, including a description, genre, year of release, runtime, and age rating, along with the option to buy or rent:[2]



---

[1]  Citations to "¶ _" refer to the corresponding paragraphs in the Complaint (Dkt. 1).

[2]  While not relevant to Plaintiff's transaction, some content offered on the Apple TV app is available only through subscriptions and may not be available for purchase or rent.

¶ 7; *see also* ¶ 5.

The listing page may also include icons that show the highest quality format available in the Apple TV app for viewing the movie.  Among these icons is one labelled "4K," which means that the movie can "be viewed in 4K … by streaming the content over an internet connection."  ¶ 9.  "4K refer[s] to high-end resolution of approximately 4,000 pixels," which—when played on a 4K-compatible display—may offer sharper and more detailed imagery.  ¶ 7.  Other icons include "Dolby Vision" and "Dolby Atmos," which refer to additional features that are available when the movie is played on a system compatible with the proprietary Dolby technology.  *See id.*  As Apple explains to users on its website, the actual quality available depends on numerous factors, including whether the user has a compatible device and display, and whether the user has "[a]n Internet connection fast enough to watch high-quality content."  *See* Sze Decl., Ex. C at 1.

In addition to streaming the digital content, users who purchase a movie or TV show on the Apple TV app also have the "opportunity … to 'download' [the] digital content" to their own device for permanent offline access.  ¶ 8.  As further explained in Apple's Terms and Conditions for the Apple TV app (the "Terms"), purchased movies are "available … to download, redownload, or otherwise access from Apple," and Apple encourages users to "download all purchased Content to a device … to back it up":

> Purchased Content will generally remain available for you to download, redownload, or otherwise access from Apple.  Though it is unlikely, subsequent to your purchase, Content may be removed from the Services and become unavailable for further download or access from Apple (for instance, because Apple loses its right from the Content provider to make it available).  To ensure your ability to continue enjoying Content, we encourage you to download all purchased Content to a device in your possession and to back it up.

Sze Decl., Ex. A at 3.[3]  The Terms also explain that "Certain Content may not be available for download at all."  *Id.* at 4.  Likewise, on the support webpage referenced above, Apple also informs users that "You can download a copy of an HD movie to your iPhone, iPad, iPod touch, Mac, or PC, but you

---

[3] Plaintiff's Complaint relies upon and incorporates by reference Apple's Media Services Terms and Conditions for the United Kingdom.  *See* ¶ 17 n.4.  Although Apple does not concede that the United Kingdom version of the Terms is applicable to Plaintiff (who resides in California, *see* ¶ 13), the relevant language excerpted in this brief is the same in the United States version of the Terms.  *Compare* https://www.apple.com/uk/legal/internet-services/itunes/uk/terms.html, *with* https://www.apple.com/legal/internet-services/itunes/us/terms.html.

Gibson, Dunn & Crutcher LLP

can't download a 4K version." Sze Decl., Ex. C at 2. Apple does not state to users that they can download movies in 4K resolution, and Plaintiff's Complaint does not allege any such statement exists.

In August 2025, Plaintiff purchased *F1: The Movie* on the Apple TV app, which he alleges was "advertised as '4K' on the screen at the time he made the purchase." ¶ 14. Below is an illustrative screenshot depicting the listing page for this movie, including the "4K" icon:



Sze Decl., Ex. B. Plaintiff alleges he paid $24.99 for the movie. ¶ 14. He does not claim that the price he paid for the movie was higher than the prices offered on other platforms for the same title.

Plaintiff further alleges that the movie is "subject at all times to Apple removing the license to view the content if it chooses to." ¶ 9. However, he does not allege that his ability to watch the movie has ever been taken away or altered. Nor does he claim there has been any actual impairment to his ability to access or watch the movie, which remains available to him on the Apple TV app—including for streaming in 4K resolution—to this day. Plaintiff also acknowledges he can download a copy of the movie to his own device for permanent offline access, but alleges he does not have the "opportunity to download the movie for offline viewing in 4K resolution." ¶ 14; *see also* ¶ 8.

Plaintiff filed this lawsuit shortly after purchasing the movie. His Complaint asserts four claims for relief: "Violation of California's False Advertising Law" (Count I); "Violation of California's Unfair Competition Law" (Count II); "Violation of California's Consumers Legal Remedies Act" (Count III); and "Unjust Enrichment" (Count IV). Plaintiff seeks to represent a putative nationwide and California classes of "[a]ll persons" "who have purchased a digital audiovisual work from Apple TV that was advertised as '4K.'" ¶ 20.

## IV.    ARGUMENT

There are multiple, independent reasons to dismiss the Complaint.  First, because Plaintiff does not allege that he has suffered, or is likely to suffer, any cognizable injury, he lacks Article III and statutory standing to bring a claim.  Second, even if Plaintiff had standing, the Court should nonetheless dismiss the Complaint because Plaintiff's claims are legally deficient and inadequately pled.

**A.    Plaintiff Lacks Standing to Bring Claims Against Apple**

**1.    Plaintiff Has Not Suffered Any Concrete and Non-Speculative Injury.**

Plaintiff's lawsuit should be dismissed because it is premised on a non-existent and hypothetical theory of injury.  To establish Article III standing, Plaintiff must "show an injury, trace that injury to the defendant's conduct, and prove that courts can provide adequate redress for the injury." *Morehouse*, 2025 WL 3525573, at *1 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Plaintiff must similarly establish standing under the UCL and FAL, which likewise require him to demonstrate he has "suffered injury in fact and has lost money or property as a result of" the defendant's allegedly wrongful conduct.  Cal. Bus. & Prof. Code §§ 17204, 17535.  This statutory requirement—"lost money or property"—demands "that injury be economic, [which] renders standing under [the UCL and FAL] substantially narrower than federal standing."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011).  Similarly, the CLRA requires showing "some kind of tangible increased cost or burden to the consumer."  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009).  The California Legislature required a "palpable threshold of damage" because it "did not want the costs of a lawsuit to be incurred when no damage could yet be demonstrated." *Id.* at 646.

Plaintiff has not been injured because he continues to have full access to the movie he purchased and has not "lost" anything that he purchased.  His concern that he *might* lose access to the movie in the future is speculative, and there are no plausible, non-conclusory allegations that he "overpaid" for the movie.  Without injury, Plaintiff lacks standing and his claims must be dismissed.

**a.    *Plaintiff Has Not Been Injured Because He Still Has Access to the Movie He Purchased.***

Most fundamentally, Plaintiff cannot allege an injury because he has not lost access or suffered any harm with respect to his purchase of a movie on the Apple TV app.  The movie he purchased is

Gibson, Dunn & Crutcher LLP

still available to him on the Apple TV app today, where he can stream or download it at any time (to the extent he hasn't already).  As this Court recently recognized in *Morehouse*—which dismissed a similar claim for alleged violations of Section 17500.6 premised on speculative lost future access to an ebook on Apple Books—where a plaintiff "do[es] not contest that the [digital goods] that they purchased remain available to them and have been available to them consistently," there is no concrete loss or injury.  2025 WL 3525573, at *2.  Likewise, Plaintiff here "received from Apple what [he] paid for"—namely, a movie that he can watch "at any time."  *Id.*  He does not allege that his experience viewing his movie has been impaired in any way or offer any facts suggesting that he is likely to lose access to the movie in the future.

Another court has also addressed essentially identical facts in the context of the purchase of video content on Amazon Prime Video and reached the same conclusion as this Court in *Morehouse*.  In *Caudel v. Amazon.com, Inc.*, No. 20-848, 2021 WL 4819602 (E.D. Cal. Oct. 15, 2021), the plaintiff alleged that Amazon failed to inform her that Prime Video purchases were for the right to access videos—just as Plaintiff here alleges Apple did not inform him it "has the option and the right to unilaterally revoke" access to view content, ¶ 6.  The court dismissed the lawsuit for lack of standing, stating "there is only one jurisdictional fact the court need consider, and that is the undisputed fact that [the plaintiff] has never lost access to any of the videos she purchased."  2021 WL 4819602, at *2.  As the court explained, the plaintiff's alleged injury was not "concrete and particularized" nor "actual or imminent" because the plaintiff's "videos remain in her library, and her access has never been revoked."  *Id.* at *3.  The same is true here.

Nor can Plaintiff allege an injury based on the allegation that Apple *might* "terminate the license at any time" in the future.  ¶ 14.  A "risk" of harm cannot confer standing unless it "*materialize[s] or cause[s] some other injury*."  *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (emphasis added).  As explained above, no such injury has "materialized" because Plaintiff does not—and cannot—allege that his ability to watch the movie has been impacted.  To the contrary, the risk that Plaintiff might lose access to his purchased movie would require a "highly attenuated chain of possibilities," which are not sufficiently imminent to establish standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (holding no standing where allegations "require[d] guesswork as to how

1  independent decisionmakers will exercise their judgment").  For this risk to materialize, there would

2  need to be some change to the movie's availability on the Apple TV app that would prevent Plaintiff

3  from watching it, and Plaintiff must not have already downloaded *F1* for permanent offline access.

4  Plaintiff has pled no facts suggesting that these contingencies are even remotely likely to occur, and he

5  acknowledges that he can, in fact, download a copy of the movie for permanent offline storage on his

6  own device.  ¶ 8.  The Supreme Court has made clear that alleging "only an injury at some indefinite

7  future time, [where] the acts necessary to make the injury happen are at least partly within the plaintiff's

8  own control" pushes standing past the "breaking point."  *Lujan*, 504 U.S. at 564 n.2.

9      The theory of injury in this case—that there might, at some unspecified point in the future, be

10 some change impacting Plaintiff's ability to watch the movie he purchased—is also no different from

11 the theory of injury the Supreme Court rejected in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2017).

12 There, the plaintiffs alleged that "at any moment" TransUnion could disclose inaccurate information

13 contained in the plaintiffs' credit files.  *Id.* at 414–15.  But the Supreme Court held that plaintiffs lacked

14 standing because the information, if "not disclosed to a third party, causes no concrete harm."  *Id.* at

15 434.  The Court was cognizant that many putative class members would not even know that their credit

16 files contained inaccuracies and would go on living their life unaware of the "risk of future harm" until

17 "they received a check compensating them for their supposed 'injury.'"  *Id.* at 438.  Here, even if it

18 was "[u]nbeknownst to Plaintiff" that "Apple … only provided Plaintiff with a license to view the

19 movie and retained the right to terminate the license at any time" (¶ 14), none of this has any concrete,

20 real-world impact on Plaintiff's experience.  The hypothetical risk that he may lose access to a movie

21 still available to him, which he could sit down and watch on the Apple TV app at any time, is exactly

22 the type of speculative, imagined injury that *TransUnion* rejected.

23      **b.**    ***Plaintiff Cannot Rely on an "Overpayment" Theory of Injury.***

24      Plaintiff's alternative "overpayment" theory of injury—that "he would not have purchased the

25 movie, or he would have paid less for it" if he knew he was not getting "unrestricted rights" to the

26 content (¶ 14)—fares no better because it is simply a repackaging of the same speculative harm.

27 Whatever Plaintiff might mean by the phrase "actually 'purchasing'" a digital movie (¶ 6), he has not

28 alleged any difference in his real-world experience viewing his purchase.  The movie would be worth

less only if Plaintiff has actually lost his access to the movie, which he has not.

An overpayment theory of injury also is not viable because Plaintiff does not "alleg[e] any facts supporting [his] theory that [he] paid a price premium" for the movie—nor can he. *Morehouse*, 2025 WL 3525573, at *2. As this Court recently recognized, a plaintiff "cannot meet their injury in fact burden 'by making only conclusory statements unsupported by allegations of fact.'" *Id.* (quoting *Castillo v. Walmart, Inc.*, No. 24-6757-BLF, 2025 WL 1828465, at *4 (N.D. Cal. July 1, 2025)). Rather, a plaintiff must provide more than "conclusory allegations that their [products] are worth less." *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017). A plaintiff must allege, for example, "how much they paid for" a product, "how much they would have paid for it absent the alleged deception," and "any other details regarding the price premium." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019). Applied here, these pleading requirements mean that Plaintiff must allege that the movie "was worth ***objectively*** less than what [he] paid for it." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707 (9th Cir. 2020) (emphasis added).

The Complaint's allegations fall far short of this standard. It does not allege that the terms of the purchase, including the potential availability of downloading the movie in a particular resolution, had "a demonstrable effect on the market" for the movie or that these features "forced [him] to replace or discontinue using" his movie. *Beyer v. Symantec Corp.*, No. 18-2006-EMC, 2019 WL 935135, at *4 (N.D. Cal. Feb. 26, 2019) (dismissing overpayment claim for failure to allege sufficient facts of overpayment). For instance, Plaintiff does not allege that the same movie was available in the same format on another platform for a lower price, such that he paid a premium for the movie on the Apple TV app. Plaintiff also does not allege that the Apple TV app or other platforms charge more for video content available in 4K, compared to video content available only in a lower resolution; nor does he allege that other platforms selling this movie permit downloading in 4K resolution. Therefore, Plaintiff does not plead "sufficient facts … to show that the products [he] purchased were offered for higher prices than other comparable products," or that he "purchased the products based on the alleged misrepresentations." *Morehouse*, 2025 WL 3525573, at *2.[4]

---

[4] Even a cursory investigation would show that the price for the same movie on different online

1   It is also of no moment that Plaintiff claims he "would not have purchased the movie, or he

2   would have paid less for it," had he known the movie was not available for download in 4K resolution.

3   *See* ¶ 14.  Not only does Plaintiff concede that he can still readily watch the movie in 4K resolution by

4   streaming it (*see supra*, p. 4), he does not allege that he has ever attempted to download in 4K

5   resolution, that he has a device with sufficient capacity to store a voluminous 4K-resolution movie file,

6   or even that he has a device capable of playing a movie in 4K resolution.  Many televisions, laptops,

7   tablets, and smartphones lack the storage capacity to download, or screen required to play, content in

8   4K resolution.[5]  Without allegations about his own use of the movie—including information about his

9   devices—Plaintiff cannot show that he was injured.

10  Moreover, Plaintiff's overpayment theory of injury doesn't work because he does not—and

11  cannot—plausibly allege that downloading the movie in 4K resolution was part of the bargain to begin

12  with.  To assert this type of injury, a "plaintiff must show that [he] did not receive a benefit for which

13  [he] actually *bargained*."  *McGee*, 982 F.3d at 706.  In *McGee*, the plaintiff sued a snack manufacturer

14  because she allegedly overpaid for the snack, believing it had "only safe and healthy ingredients," when

15  in fact it contained certain fats.  *Id.* The Ninth Circuit dismissed this theory of injury because the

16  manufacturer did not make representations about safety or healthiness, and the plaintiff's "assumptions

17  were not included in the bargain."  *Id.*; *see also Birdsong v. Apple Inc.*, 590 F.3d 955, 961 (9th Cir.

18  2009) (dismissing overpayment allegation where "plaintiffs do not allege that Apple made any

19  representations that iPod users could safely listen to music at high volumes" and so "plaintiffs' alleged

20  injury in fact is premised on … [a] benefit that was not part of the bargain to begin with").  The same

21  is true here.  Plaintiff merely asserts his subjective *belief* that he would be able to download his

22  purchased movie in 4K resolution.  But nothing in the Complaint suggests Apple ever told him he was

23  purchasing the ability to download the movie in 4K resolution.  That is because no such statement by

24  Apple exists.

25  _____

26  platforms is generally the same, thereby undercutting any notion that Plaintiff paid a "premium" for
    his purchase on the Apple TV app.

27  [5]  iPhones, iPads, and MacBooks, for example, do not have screens capable of displaying content in
    4K resolution.  *See, e.g.*, Apple, *iPhone 17 Specs*, https://www.apple.com/iphone-17/specs/ (last visited

28  Dec. 8, 2025) (noting that the phone's display resolution is "2622-by-1206" pixels rather than the 4K
    standard of 3840-by-2160 pixels).

Gibson, Dunn &
Crutcher LLP

1    At most, Plaintiff points to this icon on the listing page:



8    *See* ¶ 7.  But this icon does not say anything—expressly or implicitly—about downloadability.  And,

9    where Apple did describe this icon, it explained that the icon denotes the "highest quality format that

10   the Apple TV app offers," but never guaranteed that 4K resolution would be available in every viewing

11   mode.  *See* Sze Decl., Ex. C at 1.  Not only that, but Apple further informed users that "[y]ou can

12   download a copy of an HD movie to your iPhone, iPad, iPod touch, Mac, or PC, ***but you can't***

13   ***download a 4K version***."  *Id.* at 2 (emphasis added).  Because Plaintiff cannot "identify which specific

14   alleged affirmative misrepresentations or material omissions [he] relied on," he cannot "proceed with

15   [a] price premium theory of injury."  *Morehouse*, 2025 WL 3525573, at *2.

16        **2.    Plaintiff Lacks Standing to Seek Injunctive Relief.**

17        Plaintiff also cannot establish standing to seek forward-looking injunctive relief.  "[W]here

18   there is no showing of any real or immediate threat that the plaintiff will be wronged again," the plaintiff

19   lacks standing for injunctive relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  In the

20   context of a plaintiff who seeks relief related to the future re-purchase of goods, "[a] 'some day'

21   intention[]" of purchasing—without any "concrete plans, or indeed even any specification of when the

22   'some day' will be—do[es] not support a finding of the 'actual or imminent' injury that Article III

23   requires."  *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (quoting *Lujan*,

24   504 U.S. at 564).

25        Here, Plaintiff has put forth only the barest allegations of a "some day" purchase.  He generally

26   alleges he "remains interested in purchasing Apple TV digital content," "intends on purchasing them

27   in the future," and "would purchase them" if the alleged misrepresentations were resolved.  ¶ 15.  These

28   allegations fall well short of the concrete plan or specifications needed to establish a real or immediate

threat of harm.  Plaintiff does not specify what digital content he intends to purchase through the Apple TV app.  And because he alleges no facts suggesting he paid a price premium for his movie (e.g., that he paid more on the Apple TV app than he would have paid on another platform for the same movie), he cannot argue that he would be at risk of paying a premium for future purchases.  *See supra*, p. 8.  As such, Plaintiff has "not adequately alleged that [he] will be harmed by loss of access to [his movie] in the future, nor that [he] will be harmed by paying a price premium in the future because [he has] not alleged facts showing price comparisons."  *Morehouse*, 2025 WL 3525573, at *2.

Nor does Plaintiff face a threat of future harm, because there is no question that he now knows he is purchasing indefinite access to digital content on the Apple TV app and the parameters of downloads for such content.  For instance, by citing Apple's Media Services Terms and Conditions in his Complaint (*see* ¶ 17 n.4), there is no question Plaintiff now knows that "[c]ontent may … be removed from [Apple's] Services at any time (for instance, because Apple loses its right from the Content provider to make it available), after which it cannot be downloaded, redownloaded, or otherwise accessed from Apple."  Sze Decl., Ex. A at 4.  He also knows that Apple "encourage[s him] to back up [his] Content regularly" (*id.*), and that he may "download a copy of an HD movie" to his device for permanent offline storage, but that he "can't download a 4K version" (*id.*, Ex. C at 2).  Thus, as in this case, "where a plaintiff learns information during litigation that enables [him] to evaluate product claims and make appropriate purchasing decisions going forward," injunctive relief "would serve no meaningful purpose as to that plaintiff."  *Jackson v. Gen. Mills, Inc.*, No. 18-2634, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020); *see also, e.g.*, *Fernandez v. Atkins Nutritionals, Inc.*, No. 17-1628, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (holding no standing for injunctive relief where plaintiff "now has knowledge that enables her to make an appropriate choice with respect to [the defendant's] products"); *Cabrera v. Bayer Healthcare LLC*, No. 17-8525, 2024 WL 1699357, at *13 (C.D. Cal. Feb. 23, 2024) (holding plaintiff "lacks standing to pursue injunctive relief" because she "does not need to rely on [d]efendants' representation about the Products" because she is on notice of the alleged issue and can simply read the products' labels).

In sum, Plaintiff has not suffered an injury that could establish standing for either past or future harms under Article III or the state statutory causes of action, and the Complaint should be dismissed.

**B.     Plaintiff Has Not Alleged Facts Sufficient to State a Claim for Relief**

Even if Plaintiff could allege he has suffered an injury, the Complaint should nonetheless be dismissed because it does not allege facts sufficient to state a claim.  To survive a motion under Rule 12(b)(6), a claim must be "plausible on its face" and the plaintiff must offer more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  While courts normally accept nonconclusory factual allegations as true, they "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (punctuation omitted).

In addition to these requirements, "[c]onsumer-protection claims that sound in fraud are subject to the heightened pleading requirements of" Rule 9(b), which requires alleging "with particularity the circumstances constituting fraud."  *In re Apple Inc. Device Perf. Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. 2019); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Because Plaintiff's FAL, CLRA, and UCL claims sound in fraud (*see, e.g.*, ¶¶ 41, 33, 51), they therefore must satisfy Rule 9(b).  *See Kearns*, 567 F.3d at 1126 (explaining that "claims against [a defendant] for their failure to disclose information pertinent to consumers" are grounded in fraud).

Plaintiff's pleading does not meet this standard.  *First*, Plaintiff cannot base his FAL, UCL, and CLRA claims on an alleged violation of Section 17500.6.  Those claims must be dismissed because that statute does not apply to his transaction.  *Second*, Plaintiff's generalized misrepresentation claims fail because he does not allege that Apple made any actionable misrepresentation about his purchase of the movie.  *Third*, all of Plaintiff's claims seek equitable relief, which should be dismissed because he does not plead that he lacks an adequate remedy at law.

**1.     Plaintiff Has Not Alleged That Section 17500.6 Applies to His Transaction Here.**

Plaintiff alleges a violation of Section 17500.6 of the California Business & Professions Code, a new statute that regulates the advertising of digital goods under certain circumstances clearly

delineated by the California Legislature.  *See* ¶ 1.  But his own Complaint establishes that the statute does *not* apply to his transaction on the Apple TV app.

As a threshold matter, Section 17500.6 "***does not apply***" to the sale of any digital good "that the seller cannot revoke access to after the transaction," such as when the seller makes "the digital good available at the time of purchase for ***permanent offline download*** to an external storage source to be used without a connection to the internet."  Cal. Bus. & Prof. Code § 17500.6(b)(4)(C) (emphases added).  Plaintiff himself cites legislative history confirming that the Legislature expressly envisioned that the requirements of Section 17500.6 would *not* apply where a service permits the user to download the purchased digital good for permanent offline access.  *See* ¶ 3 (quoting from the California Rules Committee notes and comments to Section 17500.6; the very first sentence of the report states that the statute applies only to transactions involving a "digital good ***that is not available for permanent offline download***").[6]  Yet Plaintiff concedes, as he must, that the Apple TV app offers an "opportunity for consumers to 'download' digital content after 'purchase.'"  ¶ 8.  His Complaint therefore expressly forecloses the applicability of Section 17500.6 on its own terms.  "Accepting all of the allegations in [the] complaint as true," Plaintiff has not stated a claim to relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 669.[7]

And while Plaintiff suggests that Apple "did not provide [him] with an opportunity to download the movie for offline viewing in 4K resolution" (¶ 14), that is irrelevant to Section 17500.6.  The statute says nothing about technical details like resolution quality (which is not surprising, given the rapid pace of technological change and the variety of formats in which media is made available).  To the contrary, the statute generally defines a "digital audiovisual work" as a "motion picture[]," without reference to specific technical specifications like pixel resolution.  Cal. Bus. & Prof. Code § 17500.6(a)(4).  Nothing in the legislative history suggests that the statute's applicability hinges on

---

[6]  Senate Judiciary Committee, Analysis of AB 2426, at 1 (June 6, 2024), https://sjud.senate.ca.gov/system/files/2024-06/ab-2426-irwin-sjud-analysis.pdf (emphasis added).

[7]  The Complaint suggests that downloads are only available for a "short period of 30 days" within purchase, but Plaintiff cites nothing in support of this belief and is mistaken.  *See* ¶ 8.  Regardless, since it is sufficient under Section 17500.6 that downloads be available "at the time of purchase," Cal. Bus. & Prof. Code § 17500.6(b)(4)(C), Plaintiff's (erroneous) allegation about the time period within which downloads are available has no bearing on the Section 17500.6 analysis.

DEFENDANT APPLE INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 5:25-CV-08593-NW

Gibson, Dunn & Crutcher LLP

the ability to download a specific file format, and there is no reasonable dispute that Plaintiff can download a copy of the "motion picture[]"—i.e., *F1: The Movie*—that he purchased.  In short, because even Plaintiff alleges that the Apple TV app made the movie available for download at the time of purchase, Section 17500.6 does not apply to his transaction.

### 2. Plaintiff Fails to Allege the Necessary Elements to State a Misrepresentation Claim (Counts I–III).

#### a. *Plaintiff Does Not Allege Any Actionable Misrepresentation.*

Plaintiff's misrepresentation claims under the FAL, CLRA, and UCL should likewise be dismissed because he does not allege any actionable omission or misrepresentation, for several reasons.

(i)    <u>Plaintiff Does Not Identify Any Actionable Omission Relating to the Sale of a License to Access Digital Content</u>.  Plaintiff alleges that the "'Buy or Rent' Button" on the Apple TV app listing pages is misleading because it "present[s] … separate prices to either 'Buy' or 'Rent' the content" when clicked.  ¶¶ 4–5.  Specifically, he alleges that the Apple TV app's lack of "disclosures or asterisks [to explain] that the 'Buy' option is actually an offer for the sale of a 'license,' and not an offer of an unrestricted ownership interest in the digital good," constitutes an actionable omission.  ¶ 5.

This omissions theory is unavailing.  Plaintiff not only fails to allege any material omission as a matter of law, he also urges an interpretation that is foreclosed by statute.

*First*, "[o]missions may be the basis of claims under California consumer protection[] laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'"  *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 824, 835 (2006)).  Omission-based claims under the FAL, UCL, and CLRA "are governed by the 'reasonable consumer' test—a plaintiff must 'show that members of the public are likely to be deceived' by the omission or misrepresentation."  *Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1228 (9th Cir. 2019) (internal citations omitted).  "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.* at 1228–29 (quoting *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)).

Gibson, Dunn & Crutcher LLP

Here, the claimed omission—namely, that "there is no prominent or adequate disclosure that the sale is a mere license" (¶ 15)—is unlikely to deceive anyone because it is not at odds with anything Apple said.  The term "Buy" accurately describes the transaction.  Merriam-Webster defines "buy" as meaning "to acquire possession, ownership, or *rights to the use or services of* by payment especially of money."   Buy, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/buy (emphasis added).  And of course, there are many everyday examples in which one can "buy" something—like tickets to a movie or concert—that do not grant "an unrestricted ownership interest" in anything.  *See* ¶ 5.  In fact, even a consumer who buys a physical DVD of a movie does not receive "unrestricted" ownership and distribution rights to the movie, but instead typically receives only the right for private viewing.  *See* 17 U.S.C. § 106 (providing that only the copyright owner "has the exclusive rights … to reproduce the copyrighted work" or "in the case of … motion pictures and other audiovisual works, to perform the copyrighted work publicly").  Nothing in the term "Buy" implies that a retail purchaser will receive "unrestricted" rights to a good (whether digital or analog).  *See generally*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017) (explaining that buyers who lawfully "purchase[] physical discs containing copyrighted movies and television shows … are only entitled to 'sell or otherwise dispose of the possession of that copy,' not to reproduce the work").  The Apple TV app's use of the term "Buy" is therefore similar to a brick-and-mortar retailer that sells a DVD without expressly telling its customers they have limited rights to use the content in their purchased DVD.

Nor is the term "Buy" misleading when presented alongside a less expensive "Rent" option.  *See* ¶ 5.  "Rent" indicates that a user may get access to stream a title for a limited time period, whereas "buy" permits the user to access the title without such a time limitation.  Therefore, the "Buy" button gives users exactly what they bargained for—access to the movie without a time limitation—and cannot be considered misleading.  *See Morehouse*, 2025 WL 3525573, at *2 (finding that where "Plaintiffs acknowledge that they can download their e-books and audiobooks," even if the download is "subject to restrictions," "Plaintiffs have received from Apple what they paid for—e-books and audiobooks that can be read at any time").

*Second*, even if there were some confusion about the meaning of "buy" in the context of a digital

DEFENDANT APPLE INC.'S MOTION TO DISMISS COMPLAINT
CASE NO. 5:25-CV-08593-NW

Gibson, Dunn & Crutcher LLP

transaction, whether a user is buying indefinite access (versus something else) is immaterial as a matter of law.  A "defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard" or (2) the defect is material, meaning it is "central to the product's function." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022).

This lawsuit of course does not involve any "unreasonable safety hazard," so Plaintiff must allege materiality of the purported omission.  But the claimed omission is neither material—meaning a "reasonable consumer would deem it important in determining how to act in the transaction at issue," *Hodsdon*, 891 F.3d at 862—nor "central to the product's function," *Hammerling*, 615 F. Supp. 3d at 1085.  From the customer's perspective, the practical experience is the same whether the customer purchases indefinite access or "ownership" of the movie.  Either way, the user obtains access to watch the movie on their device.  And any formalistic difference between a the right to indefinitely access a title and other ownership is far from "central" to the Apple TV app, which offers consumers the ability to watch their chosen title on a wide range of different devices and in a variety of languages.  As the purported omission is neither material nor central to the function of the digital good Plaintiff was sold, he cannot identify "any basis for a duty to disclose" and the claim must be dismissed.  *See Levit v. Nature's Bakery, LLC*, 767 F. Supp. 3d 955, 969 (N.D. Cal. 2025).

In addition to pleading materiality, a plaintiff alleging an actionable omission must further demonstrate that one of the *LiMandri* factors applies to their transaction—namely, that defendant is a fiduciary of the plaintiff, that it had "exclusive knowledge" of or "actively conceal[ed]" the material facts, or that it made a "partial representation" while "suppress[ing the] material facts." *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).  None of these factors are present here.  Apple is not a fiduciary of Plaintiff, and far from having "exclusive knowledge" or "actively conceal[ing]" the restrictions on 4K downloads, Apple affirmatively disclosed this information on its website. *See supra*, pp. 3–4; *see also In re Plum Baby Food Litig.*, No. 21-913-YGR, 2024 WL 1354447, at *5 (N.D. Cal. Mar. 28, 2024) (plaintiff failed to allege exclusive knowledge where "defendant has disclosed on its own website that its products may contain" the claimed defect).  Plaintiff also has alleged no partial representations made by Apple.

*Third*, any alleged omission regarding the terms of the purchase is not actionable because the

1   interpretation urged by Plaintiff is foreclosed by the very law that Plaintiff invokes.  The Legislature's

2   enactment of Section 17500.6 is a safe harbor confirming that the "Buy" button is not misleading as a

3   matter of California law.  Section 17500.6 directly regulates the sale of digital goods, and in enacting

4   this statute, the Legislature decided that use of the term "buy" may be misleading if the digital goods

5   *cannot* be downloaded.  *See supra*, p. 13.  The implication from this legislative enactment is that using

6   the term "buy" for the sale of a digital good that *can* be downloaded is not misleading as a matter of

7   law.

8            "[S]afe harbors exist both if the Legislature has 'permitted certain conduct' and if it has

9   'considered a situation and concluded that no action should lie.'"  *Barber v. Nestlé USA, Inc*., 154 F.

10  Supp. 3d 954, 961 (C.D. Cal. 2015) (quoting *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co*., 20

11  Cal. 4th 163, 182 (1999)), *aff'd*, 730 F. App'x 464 (9th Cir. 2018).  Courts frequently apply this doctrine

12  to determine whether a defendant's disclosures are adequate, particularly when there is already a statute

13  that directly "speak[s] to the conduct at issue."  *Barber*, 154 F. Supp. 3d at 961.  As the California

14  Supreme Court has explained in the context of the UCL, "[a]lthough the unfair competition law's scope

15  is sweeping, it is not unlimited," and "[s]pecific legislation may limit the judiciary's power to declare

16  conduct unfair."  *Davis v. HSBC Bank Nev., N.A*., 691 F.3d 1152, 1164 (9th Cir. 2012).  Thus, where

17  the Legislature has "considered a situation" and "concluded no action should lie, courts may not

18  override that determination" and "plaintiffs may not use the general unfair competition law to assault

19  that harbor."  *Id*. (internal citations omitted).  This doctrine "equally applies to claims under the CLRA

20  and FAL."  *Barber*, 154 F. Supp. 3d at 958.

21           Here, Section 17500.6 provides a safe harbor for liability arising out of the use of the term

22  "buy" when selling a digital good that can be downloaded for permanent offline access.  The statute

23  *directly* and *specifically* "speak[s] to the conduct at issue"—namely, the use of the term "buy" in the

24  context of a digital transaction—and the Legislature determined that disclosures should not be required

25  where a seller "mak[es] the digital good available at the time of purchase for permanent offline

26  download."  Cal. Bus. & Prof. Code § 17500.6(b)(4)(C).  The "buy" language in the Apple TV app

27  interface therefore is not misleading as a matter of law.  Just as in *Barber*, where the court found that

28  a California statute mandating certain disclosures related to forced labor undercut plaintiffs' argument

1    that additional disclosures were required, the Legislature "considered the very problem Plaintiff[]

2    identif[ies]" and created an exception that confirms no additional disclosure is required.  *Id*. at 962.

3    Plaintiff cannot now invoke general consumer protection statutes like the CLRA, FAL, and UCL or the

4    common law to impose liability based on conduct the Legislature has already considered and condoned.

5          (ii)    Plaintiff Does Not Identify Any Actionable Misrepresentation Relating to the "4K"

6    Icon.  Plaintiff's alternative theory of misrepresentation, which challenges the "4K" icon, is likewise

7    unavailing.  According to Plaintiff, the "4K" icon that is displayed on the listing page is "fraudulent as

8    it represents that the audiovisual works are available in 4K resolution."  ¶ 41.  But Plaintiff concedes

9    the works *are* "available" in 4K resolution, as he alleges that users may "view the audiovisual works

10   in 4K online with an internet connection."  ¶ 33.  Hence, the representation created by the 4K icon is

11   not false.

12         Plaintiff nonetheless insists that the 4K icon is misleading because "putative 4K digital content

13   … cannot be downloaded for offline viewing in 4K" on the Apple TV app.  ¶ 9.  This argument fares

14   no better.  The icon does not say or imply anything about downloadability.  Plaintiff also does not point

15   to a *single* statement by Apple telling users that downloads are available in 4K resolution.   To the

16   contrary, as explained above, Apple clearly informs users in its guide on how to browse and make

17   purchases on the Apple TV app that "[t]o stream high-quality video formats, you need a fast Internet

18   connection … .  You can download a copy of an HD movie to your iPhone, iPad, iPod touch, Mac, or

19   PC, but you can't download a 4K version." Sze Decl., Ex. C at 2.

20         Plaintiff's misrepresentation claims based on the "4K" icon also fail under the reasonable

21   consumer test, which "requires a probability 'that a significant portion of the general consuming public

22   or of targeted consumers, acting reasonably in the circumstances, could be misled'" by the alleged

23   misrepresentation.  *Cheslow v. Ghirardelli Chocolate Co*., 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020)

24   (internal citations omitted).  A statement "does not become false and deceptive merely because it will

25   be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of

26   persons to whom the representation is addressed." *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1089

27   (N.D. Cal. 2018) (quoting Davis, 691 F.3d at 1162).  "At the motion to dismiss stage, a court can

28   dismiss a complaint for failure to state a claim … where it can conclude as a matter of law that members

Gibson, Dunn &
Crutcher LLP

18

of the public are not likely to be deceived." *La Barbera v. Ole Mexican Foods Inc.*, No. 20-2324, 2023 WL 4162348, at *8 (C.D. Cal. May 18, 2023).

Just because Plaintiff was supposedly confused by the "4K" icon does not mean there was an actionable misrepresentation as a matter of law. "To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer." *Gamez v. Zero Day Nutrition Co*., No. 22-1655, 2023 WL 12168700, at *4 (C.D. Cal. May 3, 2023). Plaintiff has not done that in his Complaint. His bare-bones description of the Apple TV app interface and "4K" icon "lacks a factual foundation to support any determination as to what reasonable consumers do (or do not) believe." *Harris v. McDonald's Corp*., No. 20-6533-RS, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021). Plaintiff does not allege any facts supporting his argument that a reasonable consumer might plausibly interpret the "4K" icon as a guarantee that 4K resolution would be available in every viewing situation, any more so than as an indication that Apple has made the content available for *streaming* in 4K.

### b.   *Plaintiff Does Not Allege Reliance (Counts I–III).*

Plaintiff's claims under the FAL, UCL, and CLRA should also be dismissed because he has not adequately pled reliance. *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (reliance is required for FAL and UCL claims); *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021) (same for CLRA). "To establish actual reliance, the plaintiff must allege that 'the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.'" *Williams v. Apple Inc.*, 449 F. Supp. 3d 892, 912 (N.D. Cal. 2020). Conclusory allegations that a plaintiff "necessarily and reasonably relied on Defendant's statements" about the conduct at issue are not sufficient to plead actual reliance; rather a plaintiff must specify "when—if at all—plaintiff viewed the alleged misrepresentation [and] what actions he took as a result." *Rothman v. Equinox Holdings, Inc*., No. 22-9760, 2021 WL 124682, at *5 (C.D. Cal. Jan. 13, 2021). Moreover, it is not "enough to 'receive' a misrepresentation in a document; a plaintiff must see, read, or hear the alleged misrepresentation and rely on it." *Graham v. VCA Antech, Inc.*, No. 14-8614, 2016 WL 5958252, at *5 (C.D. Cal. Sept. 12, 2016), *aff'd sub nom. Graham v. VCA Animal Hosps., Inc*., 729 F. App'x 537 (9th Cir. 2018).

Here, Plaintiff generally describes the purchase flow in the Apple TV app but states only that he "believed that he would have unrestricted rights to download and view the movie in 4K resolution, because it was prominently advertised as '4K' on the screen at the time he made the purchase." ¶ 14. He further alleges that he "clicked the 'Buy' button when purchasing." *Id*. But aside from the "Buy" button (which is not misleading as a matter of law for the reasons described, *supra* pp. 15–16), Plaintiff's Complaint does not identify with particularity any other statement by Apple upon which he relied when making his transaction on the Apple TV app. Absent allegations identifying what specific statements Plaintiff saw and relied upon, the claims do not satisfy Rule 9(b).

### c.    *Digital Movies Are Not "Goods" or "Services" Under the CLRA (Count III).*

The Court should dismiss Plaintiff's CLRA claim for the additional reason that the digital movie he purchased is not a covered "good" or "service," but rather intangible digital media that is beyond the scope of the CLRA. Cal. Civ. Code § 1770(a). The CLRA applies only to "a transaction intended to result or that results in the sale or lease of ***goods*** or ***services*** to any consumer." *Id.* (emphases added). It specifically defines "goods" as "tangible chattels," and "services" as "work, labor, or services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *See* Cal. Civ. Code §§ 1761(b), 1770(a). Digital movies on the Apple TV app do not fit into either definition.

As a result, many courts have therefore recognized that digital media are not "goods" as defined by the CLRA. *See, e.g.*, *Lazebnik v. Apple Inc.*, No. 13-4145-EJD, 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (holding that digital version of TV episode is not a "good" under the CLRA because it is "either software or a license, not a 'tangible chattel'"); *Woulfe v. Universal City Studios LLC*, No. 22-459, 2022 WL 18216089, at *15 (C.D. Cal. Dec. 20, 2022) (same for digital movie); *Yunker v. Pandora Media, Inc.*, No. 11-3113-JSW, 2013 WL 1282980, at *13 (N.D. Cal. Mar. 26, 2013) (same for music streaming app); *Ferrington v. McAfee, Inc.*, No. 10-1455-LHK, 2010 WL 3910169, at *18–19 (N.D. Cal. Oct. 5, 2010) (same for computer security software).

Nor can digital movies be considered "services" under the CLRA, since a digital movie is not "work, labor, or services." Courts have time and again rejected attempts to distort the CLRA by recharacterizing a digital product as a service. For example, in *Pearl v. Coinbase Global, Inc.*, the

plaintiffs alleged that they purchased cryptocurrency based on misrepresentations from Coinbase. No. 22-3561-MMC, 2024 WL 3416505, at *1 (N.D. Cal. July 15, 2024). They argued that the CLRA applied because, although cryptocurrency may not be a tangible good, Coinbase itself offered a platform on which to trade cryptocurrencies and so should be construed as a service. *Id.* at *5. The court rejected that argument because "'the existence of ... ancillary services' is, however, insufficient 'to bring intangible goods within the coverage of the [CLRA].'" *Id.* (quoting *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 65 (2001)); *see also Meyer v. Cap. All. Grp.*, No. 15-2405, 2017 WL 5138316, at *7 (S.D. Cal. Nov. 6, 2017) ("For services 'in connection with' the sale of goods to qualify under the CLRA, 'goods' must themselves be covered by the CLRA."). Plaintiff cannot, therefore, claim that the Apple TV app is a "service" covered by the CLRA; and in any case, his allegations are squarely about the digital movie he purchased, not the Apple TV app as a platform.

Because digital movies are neither "goods" nor "services," Plaintiff cannot bring a CLRA claim based on his Apple TV app transaction.

### d.    *Plaintiff Has Not Pled an Intent to Defraud (Count III).*

Plaintiff also does not state a claim under the CLRA because he has not adequately pled that Apple had the requisite intent to defraud him. *See Kumandan v. Google LLC*, No. 19-4286-BLF, 2022 WL 103551, at *15 (N.D. Cal. Jan. 11, 2022) (dismissing fraud-based CLRA claim for failure to adequately allege intent to defraud). While "the heightened pleading requirements of Rule 9(b) do not apply to allegations of [intent], … [t]his does not mean … that conclusory allegations of knowledge or intent suffice." *Kowalsky v. Hewlett-Packard Co.*, No. 10-2176-LHK, 2011 WL 3501715, at *2–3 (N.D. Cal. Aug. 10, 2011). A plaintiff asserting a fraud claim must still allege "facts supporting a reasonable inference" of an intent to defraud. *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013).

Plaintiff pleads no facts plausibly supporting a reasonable inference of intent to defraud. The Complaint provides only conclusory allegations regarding intent, asserting—without further explanation—that Apple "has known or reasonably should have known that its representations and omissions concerning the audiovisual works is false and deceptive, and that Plaintiff and other members of the Nationwide Class and California Class would reasonably and justifiably rely on it when

purchasing the audiovisual works." ¶ 51.  These conclusory allegations are insufficient.  *See Graham v. Andros Foods USA, Inc.*, No. 25-3561, 2025 WL 3190647, at *11 (C.D. Cal. Aug. 12, 2025) (conclusory allegations that "[d]efendant 'intentionally misleads consumers'; and 'knew or should have known' it was making misleading representations" do not satisfy Rule 9(b)).  Plaintiff does not provide any particularized and plausible factual allegations to support an inference that Apple *intended* for the Apple TV app interface to be misleading.  To the contrary, Apple *disclosed* that movies on the Apple TV app would not be available for download in 4K resolution quality, which undermines any suggestion that Apple somehow intended to defraud anyone.  *See supra*, pp. 3–4.  For these reasons, Plaintiff has not adequately pled an intent to defraud.

### e.    *Plaintiff Has Not Alleged "Unfair" or "Unlawful" Conduct Under the UCL (Count II).*

The UCL claim should be dismissed for the further reason that Plaintiff has not alleged any "unlawful" or "unfair" business practice.  The only alleged "unlawful" or "unfair" business practices are premised on the same facts as his other claims (¶¶ 37–38, 42)—and therefore the UCL claim rises or falls with those claims.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (dismissing UCL claim "based on the same contentions" as other failed claims); *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016) (same).

### 3.    Plaintiff Cannot Seek Equitable Relief Because He Has an Adequate Remedy at Law (All Counts).

Plaintiff's claims for equitable relief under the FAL, UCL, and CLRA, and for "unjust enrichment" also must be dismissed because he has an adequate remedy at law.  As equitable claims,[8] these claims must be dismissed "if the pleading does not demonstrate the inadequacy of a legal remedy."  *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021).  To demonstrate the inadequacy of a legal remedy, "plaintiffs must include in the complaint *substantive* allegations that they lack an adequate legal remedy."  *Hubbard v. Google LLC*, No. 19-7016-SVK, 2024 WL 3302066,

---

[8]  *See Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 9 Cal. 5th 279, 326 (2020) (holding that the FAL and UCL are "clearly equitable"); *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003) ("Unjust enrichment is an equitable rather than a legal claim."); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (describing relief under the CLRA as equitable).

at *4 (N.D. Cal. July 1, 2024) (emphasis added) (quotation marks and citations omitted).  A plaintiff's conclusory assertions that he lacks an inadequate remedy at law do not suffice.  *Id.*  Crucially, the burden to plead an inadequate remedy at law exists regardless of whether a plaintiff *actually* asserted a legal claim for damages; what matters is that he *could* have asserted such claim.  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).

Here, Plaintiff does not provide substantive, plausible allegations "to suggest that monetary damages would not make [him] or the putative class whole."  *Sharma*, 524 F. Supp. 3d at 908.  To the contrary, Plaintiff's invocation of an "overpayment" theory of injury—as flawed as it is (*see supra*, pp. 7–10)—only emphasizes why monetary damages would constitute an adequate remedy at law. Plaintiff specifically alleges that his injury is that he "lost money" and "would have paid less for" his movie but for the alleged misrepresentations.  ¶ 14.  This is precisely the type of claim for which there is an adequate remedy at law.  As the court explained in *Sharma*, an alleged "*loss of money* and/or *loss in value* of [the product] … is exactly the type of injury for which legal remedies are appropriate."  524 F. Supp. 3d at 908.  Similarly, in *Victorino v. FCA US LLC*, the court dismissed the equitable claims because the "injury is the overpayment of the purchase price of [the purchased products] and therefore, monetary damages is the appropriate form of damages."  No. 16-1617, 2018 WL 2455432, at *20 (S.D. Cal. June 1, 2018).

Plaintiff's argument that monetary damages may not be as "equally prompt and certain and in other ways efficient as equitable relief" (¶ 43) has also been expressly rejected by courts in this District. In *Sharma*, the court rejected this argument because—while the plaintiffs used the same conclusory phrase that Plaintiff asserts here—the plaintiffs had not actually shown any plausible reason as to why monetary damages would not be equally prompt or certain in an overpayment theory case.  524 F. Supp. 3d at 908.  His core alleged injury is that he "lost money" by paying too much for a product.  But he does not, and cannot, explain why monetary damages would not be prompt, certain, or efficient; he merely reasserts conclusory phrases that have been rejected by courts as insufficient to plead the inadequacy of legal remedies.  And Plaintiff's argument that he could be awarded less in compensatory damages than the price premium he paid (*see* ¶ 44) makes no sense when compensatory damages, by definition, compensate a plaintiff for his economic losses.

Nor can Plaintiff plead equitable relief in the alternative. *See* ¶ 59. "[W]hether [p]laintiff may pursue different forms of relief in the alternative is irrelevant; he must still provide allegations sufficient to demonstrate his entitlement to each form of relief requested." *Ryan v. Starco Brands, Inc.*, No. 24-642-SVK, 2024 WL 5102651, at *7 (N.D. Cal. Apr. 19, 2024). "To hold otherwise would allow a plaintiff to avoid the requirement of pleading the inadequacy of legal remedies when seeking equitable relief by simply tacking on a request for legal relief in the alternative." *Id.* Plaintiff's claims for equitable relief under the FAL and UCL, and for "unjust enrichment" must therefore be dismissed.[9]

## V.    CONCLUSION

Plaintiff has not been injured: he purchased a movie that he can continue to watch to this day. Plaintiff does not—and cannot—allege that he ever lost access to the movie or will imminently do so, nor does he plead that he was ever prevented from watching the title in 4K resolution. As such, he lacks statutory or Article III standing. But even if Plaintiff could allege facts to confer standing, his factual allegations nonetheless fail to state a claim for relief. The Court should dismiss the Complaint.

DATED: December 19, 2025            GIBSON, DUNN & CRUTCHER LLP


                                    By:    */s/ Christopher Chorba*
                                            Christopher Chorba

                                    *Attorneys for Defendant Apple Inc.*

---

[9] Plaintiff's claim for "unjust enrichment" (Count IV) should also be dismissed "because, in California, unjust enrichment is not a cause of action." *LaBella v. Apple Inc.*, No. 24-07588-NW, 2025 WL 3014037, at *3 (N.D. Cal. Oct. 28, 2025) (Wise, J.) (quotation marks and citations omitted). "State and federal courts have consistently dismissed stand-alone claims for unjust enrichment" and "a claim for unjust enrichment will not stand where the claim simply mirrors other statutory or tort claims." *Id.* (quotation marks and citations omitted).

Gibson, Dunn &
Crutcher LLP